# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC, | Case No. 2:15-CV-1472 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| THE BLUFFS VILLAGE II COMMUNITY ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Nationstar Mortgage LLC's ("Nationstar") motion for summary judgment. (ECF No. 65). Defendants The Bluffs Village II Community Association, ("the HOA") and Alam Investment Ltd. Co. ("Alam") filed responses (ECF Nos. 71, 72), to which plaintiff replied (ECF Nos. 76, 77).

Also before the court is defendant HOA's motion for summary judgment. (ECF No. 68). Plaintiff filed a response (ECF No. 73), to which the HOA replied (ECF No. 79).

Also before the court is defendant Alam's motion for summary judgment. (ECF No. 69). Plaintiff filed a response (ECF No. 74), to which Alam replied (ECF No. 78).

**I.      Facts**

This case involves a dispute over real property located at 1708 Steamboat Drive, Henderson, Nevada, 89104 (the "property"). (ECF No. 52). On September 26, 2006, Jerilynn Coles purchased the property. *Id.* Coles obtained a loan in the amount of $190,300 from Silver State Financial Services, Inc. ("Silver State") to finance her purchase. *Id.* The loan was secured by a deed of trust recorded on October 5, 2006. *Id.*; (ECF No. 65-1). The deed of trust lists Silver State as the lender and Mortgage Electronic Registration Systems, Inc. as the beneficiary "solely

as a nominee for Lender and Lender's successors and assigns." (ECF No. 65-1). The covenants, conditions, and restrictions ("CC&R") governing the property contained a mortgage protection clause. (ECF No. 65-13).

On March 28, 2012, MERS assigned the deed of trust to HSBC Bank USA, National Association, as trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2006-AR6 ("HSBC") via a corporation assignment of deed of trust (recorded on March 30, 2012). (ECF No. 65-2). On August 27, 2014, HSBC assigned its interest in the deed of trust to Nationstar via a corporate assignment of deed of trust (recorded on September 9, 2014). (ECF No. 65-3).

Coles stopped paying dues to the HOA. On November 10, 2009, Nevada Association Services, Inc. ("NAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,854. (ECF No. 65-4). On November 29, 2011, NAS, acting on behalf of the HOA, recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $4,252.81. (ECF No. 52); (ECF No. 65-5).

On June 20, 2013, NAS recorded a notice of foreclosure sale, stating an amount due of $6,893.30 and an anticipated sale date of July 19, 2013. (ECF No. 52); (ECF No. 65-6).

Bank of America National Association ("BOA") was plaintiff's predecessor in interest. (ECF Nos. 52, 65). On July 12, 2013, Rock Jung of Miles, Bauer, Bergstrom & Winters LLP, acting on behalf of BOA, sent NAS a letter requesting a payoff ledger. (ECF No. 65-7). NAS did not provide Jung with a ledger. *Id.* Based on ledgers from different properties under the same HOA, BOA sent NAS a check for $1,620 on July 17, 2013, which represented BOA's estimate of nine months of assessments. *Id.* The HOA, through NAS, did not accept or cash the check. *Id.*

On July 19, 2013, the HOA foreclosed on the property. (ECF No. 65-8). Defendant Keynote Properties, LLC, ("Keynote") purchased the property at the foreclosure sale for $9,500. (ECF No. 52); (ECF No. 65-8). A foreclosure deed in favor of Keynote was recorded on January December 9, 2013. (ECF No. 65-8).

On May 20, 2016, Keynote transferred the property to MRT Assets, LLC ("MRT") via a grant bargain sale deed, recorded on May 23, 2016. (ECF No. 65-11). On June 18, 2016, MRT

transferred the property to Alam via a quitclaim deed, recorded on July 15, 2016. (ECF No. 65-12).

On August 3, 2015, Nationstar filed its initial complaint. (ECF No. 1). On July 21, 2016, Nationstar filed its first amended complaint. (ECF No. 32). On December 13, 2016, Nationstar filed its second amended complaint, alleging quiet title/declaratory judgment against all defendants, breach of NRS 116.1113 against the HOA, wrongful foreclosure against the HOA, and injunctive relief against Alam. (ECF No. 52).

In the instant motions, plaintiff, defendant HOA, and defendant Alam all move for summary judgment in their favor. (ECF Nos. 65, 68, 69).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

James C. Mahan
U.S. District Judge

- 3 -

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

As an initial matter, claim (4) of plaintiff's complaint will be dismissed without prejudice as the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

The court takes judicial notice of the following recorded documents: the first deed of trust (ECF No. 65-1); the assignment to HSBC (ECF No. 65-2); the assignment to Nationstar (ECF No. 65-3); the notice of delinquent assessment (ECF No. 65-4); the notice of default and election to sell (ECF No. 65-5); the notice of foreclosure sale (ECF No. 65-6); and the foreclosure deed upon sale (ECF No. 65-8). *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

  *i.* *Quiet title*

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for a party to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[1] gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

(a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
(b) The elapsing of the 90 days; and
(c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

[2] The statute further provides as follows:

as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of trustee's sale, and the recorded trustee's deed upon sale. *See* (ECF No. 65-4, 65-5, 65-6, 65-8). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle the buyer at the HOA foreclosure sale (or its successors in interest) to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

---

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

Plaintiff raises the following grounds in support of its motion for summary judgment[3] and against the defendants' motions: rejected tender; the constitutionality of NRS 116.3116 and the Ninth Circuit decision in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"); commercial reasonability under *Shadow Wood*; and retroactivity of *SFR Investments*. (ECF Nos. 65, 73, 74, 76, 77).

Defendants respond with the following relevant arguments in support of their motions for summary judgment and against plaintiff's motion: the foreclosure sale extinguished the first deed of trust; plaintiff's constitutional challenges to the statute fail on legal and factual grounds; the foreclosure sale was commercially reasonable; plaintiff failed to act to prevent the foreclosure; and Alam is protected by the bona fide purchaser doctrine. (ECF Nos. 68, 69, 71, 72, 75, 78, 79).

The court will address in turn the parties competing arguments regarding rejected tender, due process, commercial reasonability, and the retroactive application of *SFR Investments*.

### 1. *Rejected Tender Offer*

Plaintiff argues that BOA's tender of the superpriority amount on July 17, 2013, prior to the foreclosure sale preserved the first priority of the deed of trust. (ECF No. 65). Plaintiff thus maintains that Keynote and its successors in interest (including Alam) took title to the property subject to the deed of trust. *Id.*

The court disagrees. BOA, plaintiff's predecessor in interest, did not tender the amount sent forth in the notice of default or the payoff demand. (ECF No. 65-8). Rather, BOA tendered $1,620, an amount it calculated to be sufficient. *Id.*

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior

---

[3] Plaintiff does not discuss its claims for wrongful foreclosure and breach of NRS 116.1113 against the HOA in its motion for summary judgment. Accordingly, the court will construe plaintiff's motion as one requesting summary judgment on its claim for quiet title.

lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues *and maintenance and nuisance-abatement charges*," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

BOA merely presumed, without adequate support, that the amount set forth in the notice of default and the payoff demand included more than the superpriority lien portion and that a lesser amount based on BOA's own calculations would be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

The notice of foreclosure sale recorded on June 20, 2013, set forth an amount due of $6,893.30. (ECF No. 65-6). Rather than tendering the amount listed in the notice so as to preserve its interest in the property and then later seeking a refund of any difference, BOA (plaintiff's predecessor in interest) elected to pay a lesser amount based on its unwarranted assumption that the amount stated in the notice included more than what was due. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund).

After failing to use the legal remedies available to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property prior to foreclosure (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—plaintiff now seeks to profit from it and its predecessor in interest's failure to follow the rules set

James C. Mahan
U.S. District Judge

- 9 -

forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

Based on the foregoing, plaintiff has failed to sufficiently establish that its predecessor in interest tendered a sufficient amount prior to the foreclosure sale so as to render Alam's title subject to the deed of trust.

### 2. *Due process*

Plaintiff argues that NRS Chapter 116 is unconstitutional under *Bourne Valley*, wherein the Ninth Circuit held that the HOA foreclosure statute is facially unconstitutional. (ECF No. 65). Plaintiff further contends that *Bourne Valley* renders any factual issues concerning actual notice irrelevant. *Id.* at 11.

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate

1  procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Here, plaintiff has failed to show that it did not receive proper notice. Plaintiff does not argue that it lacked notice, actual or otherwise, of the event that affected the deed of trust (*i.e.*, the foreclosure sale). Accordingly, plaintiff's challenge based on due process and *Bourne Valley* fails as a matter of law.

Further, plaintiff confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Accordingly, plaintiff has failed to show that summary judgment is proper based on *Bourne Valley*.

### *3. Commercial reasonability*

Plaintiff argues that the foreclosure sale was commercially unreasonable because the property sold at approximately 9% of its fair market value, which is grossly inadequate so as to justify setting the foreclosure aside. (ECF No. 65). Plaintiff further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 65 at 12) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[4]

---

[4] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Notably, the *Shadow Wood* court did not adopt the restatement's position on the 20% threshold test for grossly inadequate sales price. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *and Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *and Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement

was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

**James C. Mahan**
**U.S. District Judge**

- 12 -

at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Plaintiff cites *ZYZZX2 v. Dizon*, no. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016) to support its argument that the foreclosure sale in this case was commercially unreasonable. (ECF No. 65 at 15). In *ZYZZX2*, the subject property was governed by CC&R's which contained a mortgage protection clause. 2016 WL 1181666, at *5. The HOA trustee sent out misleading mailings that suggested the foreclosure sale would not extinguish the first deed of trust on the property. *Id.* at *4. The property sold at a foreclosure sale for $15,000. *Id.* at *1. This court held that the mailings, in addition to the CC&R's mortgage protection clause and the "disproportionately low price" at foreclosure, constituted unfairness that warranted setting aside the sale as commercially unreasonable. *Id.* at *4–5.

Here, plaintiff fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. Plaintiff relies on its assertion that offering to tender the superpriority amount is sufficient to show fraud, unfairness, or oppression. (ECF No. 65). However, as was discussed in the previous section, the amount due on the date of BOA's tender was set forth in the notice of foreclosure sale. (ECF No. 65-5). Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BOA chose to offer to tender $1,620, its estimate of what was owed. Further, this court has rejected plaintiff's argument that a CC&Rs mortgage protection clause, without more, demonstrates fraud or unfairness that would justify setting aside a foreclosure sale. *See,*

James C. Mahan
U.S. District Judge

- 13 -

*e.g., Bayview Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, no 2:14-cv-01875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017).

The foregoing does not constitute the type of conduct sufficient to justify this court exercising its equitable power to set aside a foreclosure sale, as sale price alone is insufficient to satisfy the *Long* test. *See, e.g.*, *Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.2 ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price."). Plaintiff has not demonstrated fraud, unfairness, or oppression, and its commercial reasonability argument fails as a matter of law. *See Shadow Wood*, 366 P.3d at 1110.

### 4. Retroactivity

Plaintiff contends that *SFR Investments* should not be applied retroactively to extinguish the first deed of trust. (ECF No. 65 at 17).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. BOA*"). Thus, *SFR Investments* applies to this case.

### ii. Wrongful foreclosure and violation of NRS 116.1113

The vast majority of the parties' briefings were dedicated to the competing quiet title claims. Further, until this ruling no party was sure of the legal effect of the foreclosure sale. As such, no party adequately demonstrated in their filings that they are entitled to judgment as a matter of law on plaintiff's claims for wrongful foreclosure and violation of NRS 116.1113. The court

will deny without prejudice defendant HOA's motion to the extent it requests judgment as a matter of law on plaintiff's claims for wrongful foreclosure and breach of NRS 116.1113.

**IV.     Conclusion**

In light of the foregoing, plaintiff has not shown that it is entitled to judgment as a matter of law on its claim for quiet title. Plaintiff's motion fails to demonstrate a legal or equitable basis to quiet title in its favor.

Conversely, defendants have demonstrated that they are entitled to judgment as a matter of law on plaintiff's claim for quiet title. Pursuant to *SFR Investments*, NRS Chapter 116, and the trustee's deed upon sale, the foreclosure sale extinguished the deed of trust. Plaintiff has failed to raise any genuine issues of material fact to preclude summary judgment in defendants' favor. Therefore, the court will grant defendants' motions for summary judgment.

The court will deny without prejudice defendant HOA's motion for summary judgment as to plaintiff's claims for wrongful foreclosure and breach of NRS 116.1113.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for summary judgment (ECF No. 65) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 68) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that Alam's motion for summary judgment (ECF No. 69) be, and the same hereby is, GRANTED.

DATED March 2, 2018.

_____
UNITED STATES DISTRICT JUDGE